**IT IS SO ORDERED.**

**Dated:  31 March, 2014 05:53 PM**



JESSICA E. PRICE SMITH
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:

MURRAY D. BILFIELD, et al,

      Debtors.

_____

MURRAY D. BILFIELD,
      Counterclaim Defendant,

     v.

OHIO COMMERCE BANK,
      Counterclaim Plaintiff.

CHAPTER 7

CASE NO. 11-18474

ADV. NO. 12-01251

JUDGE JESSICA E. PRICE SMITH

**OPINION AND ORDER**

This matter is before the Court after the trial on Counts One and Four of the

Counterclaim filed by Ohio Commerce Bank against Murray D. Bilfield. Count One alleges

conversion of the collateral of Ohio Commerce Bank, and Count Four alleges that the discharge

received by Mr. Bilfield should be revoked as a result of the conversion.  For the reasons set

forth below, this Court finds that Murray D. Bilfield did convert the collateral of Ohio

1

Commerce Bank, and that he wrongfully concealed the existence of receivables due to him. Therefore, his discharge, as to the obligation to Ohio Commerce Bank, is revoked.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue of the Debtors' Chapter 7 case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual Findings

The Court finds the following facts undisputed based upon the testimony of Mr. Bilfield and the evidence presented at trial:

In September of 2009, Ohio Commerce Bank made a loan (the "Loan") in the amount of $100,000 to Bilfield & Associates Co., L.P.A. (the "LPA") and Midwest Tax Relief, LLC (the "LLC" and together with the LPA, the "Borrowers"). The Loan was secured by "[a]ll Inventory, Chattel Paper, Accounts, Equipment and General Intangibles" (the "Collateral") as established in the Commercial Security Agreement (the "Security Agreement") executed by the parties on September 30, 2009. The Loan was also personally guaranteed by Mr. Bilfield, sole owner of the LPA and sole member of the LLC. Ohio Commerce Bank's interest in the Collateral was perfected by the filing of a UCC Financing Statement with the Ohio Secretary of State on October 1, 2009. The Loan went into default on September 1, 2011.

On November 21, 2011, Ohio Commerce Bank commenced a state court action based on the defaulted Loan against the Borrowers. The state court action was settled with a Consent Judgment Entry filed on April 18, 2012, granting Ohio Commerce Bank judgment against the LPA and LLC in the amount of $105,161.86 plus variable interest of 7.25% and all costs and expenses, including reasonable attorneys' fees.

On September 30, 2011, Mr. Bilfield and his spouse (the "Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The LPA and LLC ceased operations ninety days prior to this filing on June 30, 2011. Some active cases of the Borrowers were transferred to Mr. Bilfield, who is doing business as a sole proprietor under the name Bilfield & Associates. One such case, identified as case no. 132 on the inventory of matters turned over by Mr. Bilfield and admitted into evidence, was opened on February 2, 2010. The case generated gross income of $11,000, with $5,731.75 payable to the client, $440 payable to the LPA and $3,960 payable to Mr. Bilfield. Payment was made to Mr. Bilfield on January 9, 2013. Notwithstanding the fact that there were funds due to him for this matter when he filed his bankruptcy petition, he did not disclose the receivable in his petition, schedules or Statement of Financial Affairs. Neither the schedules nor the Statement of Financial Affairs were ever amended to disclose the existence of the receivables.

The LPA also represented a client referenced to as "TBA" as set forth in the documents admitted into evidence, prior to ceasing operations on June 30, 2011. Mr. Bilfield testified that the TBA case was transferred to him as a sole proprietor and remained active. Resolution of the TBA case resulted in a settlement of approximately $90,000. The settlement proceeds included $36,000 for attorney's fees and expenses and $54,000 was to be disbursed to the client. Mr. Bilfield testified that $28,800 of the $36,000 remaining for fees and expenses was due to the LPA for work done by it prior to June 30, 2011. The remaining $7,200 was due for attorney's fees and expenses for work completed by him after the case was transferred to the sole proprietorship.

On September 22, 2011, the $90,000 settlement for the TBA matter was deposited into the IOLTA account of the sole proprietorship at PNC Bank. On September 26, 2011, $54,000 was disbursed to the client. On the same day, the remaining $36,000 was deposited into the personal

3

bank account of Murray D. Bilfield and Melinda Jane Smith Bilfield. The $28,800 due to the LPA was never paid to it.

The Debtors were granted a discharge on January 20, 2012. On July 21, 2012, the Debtors initiated this adversary proceeding. (Doc. No. 1). The complaint was amended on December 15, 2012 to restate the cause of action as a violation of the permanent injunction imposed by the discharge under 11 U.S.C. § 524(a)(2), rather than a violation of the automatic stay which was no longer in place. Ohio Commerce Bank and William Strachan, its counsel and co-defendant timely filed an answer to the complaint, denying the allegations, and Ohio Commerce Bank also asserted a counterclaim.

**Procedural History**

On September 20, 2013, Ohio Commerce Bank filed a joint motion for summary judgment seeking judgment in its favor on the complaint for violating the discharge injunction and on its counterclaim. The parties agreed that the motion for summary judgment with respect to the original complaint should be granted in favor of Ohio Commerce and Mr. Strachan. Mr. Bilfield opposed summary judgment on the counterclaim, alleging that the rules of professional conduct prohibit a security interest in the IOLTA accounts and that certain terms of art, such as collateral, client files and client matters were defined incorrectly. He also stated that any client work as of the petition date had been billed, collected and spent.

There was no factual or legal dispute that Mr. Bilfield, as president of the LPA and member of the LLC executed the Security Agreement. The Security Agreement, on its face, granted a security interest to Ohio Commerce Bank in all inventory, chattel paper, accounts, equipment and general intangibles of the entities. And since Ohio Commerce Bank was granted a security interest in those assets, it was entitled to know the location or disposition of its

4

collateral. Accordingly, this Court granted the summary judgment motion of Ohio Commerce with respect to Counts Two and Three of the counterclaim. The remaining issues to be determined at trial were whether there were client matters and proceeds thereof that originated with the LPA and had been transferred to Mr. Bilfield and whether those transfers constituted a conversion of Ohio Commerce's collateral as alleged in Count One of the Counterclaim; and, whether Mr. Bilfield's discharge, with respect to the debt owed to Ohio Commerce, should be revoked, as a result of that conversion.

## Legal Analysis

### *Count One: Conversion of Collateral*

Under Ohio law, conversion is defined as "any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 493 N.E. 2d 289 (1985). To establish conversion, Ohio Commerce must show that it had an interest in specific property, and that Mr. Bilfield wrongfully exerted dominion or control over that property, thereby denying Ohio Commerce Bank's rights in it.

As stated above, the Collateral of Ohio Commerce Bank includes "All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles" of the LPA and the LLC. Article 9 of the Uniform Commercial Code defines Account, in relevant part, as the "right to payment of a monetary obligation, whether or not earned by performance … for services rendered or to be rendered…." UCC § 9-102 (2010). The $28,800 due to the LPA in the TBA matter was a right to payment of a monetary obligation for services rendered by the LPA. As such, it was an account that was the collateral of Ohio Commerce Bank. When Mr. Bilfield deposited the $28,800 into his personal bank account and used those funds, he wrongfully exerted control over the collateral

of Ohio Commerce Bank. As such, the Court finds that Ohio Commerce Bank has proven the conversion of at least $28,800 of its collateral and finds in its favor as to Count One of the Counterclaim.

*Count Four: Revocation of Discharge Pursuant to §727(d)(1)*

Pursuant to §727(d) of the Bankruptcy Code, the Court may revoke the discharge of a debtor upon request of a creditor when "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727. The revocation of a discharge is considered an extraordinary remedy in a case. Therefore, to succeed under § 727(d)(1), Ohio Commerce Bank must demonstrate that Mr. Bilfield obtained a discharge through fraud, and that it was unaware of the fraud prior to the discharge. *In re Guadarrama*, 284 B.R. 463, 469 (2002 C.D. Cal.). Further, the fraud must be done in the procurement of the discharge, not just with respect to Ohio Commerce Bank as a creditor. *In re Barr*, 207 B.R. 160, 165 (Bankr. N.D. Ill. 1997).

Mr. Bilfield testified that upon transfer of cases from the LPA to himself, the legal fees generated became profits of his sole proprietorship, which he had a right to deposit into his personal bank account. He further testified that there were matters transferred, such as Case No. 132, that he received payment for after the filing of his bankruptcy petition. Notwithstanding this testimony, Mr. Bilfield failed to disclose the existence of these accounts receivable on Schedule B, Question 16 as of the filing of the schedules. Further, he did not amend the schedules to reflect the existence of the receivables, even after he received payment during the pendency of this case, evidencing that he acted with fraudulent intent in failing to disclose that there were receivables due and owing to him. Knowingly making a false statement under oath, which is materially related to the bankruptcy case is grounds for revocation of the discharge. Therefore, the Court finds in

6

favor of Ohio Commerce Bank on Count Four of the Counterclaim. Mr. Bilfield committed fraud in obtaining his discharge. Accordingly, pursuant to §727(d)(1), Mr. Bilfield's discharge with respect to the claim of Ohio Commerce Bank is revoked.


**IT IS SO ORDERED.**